# United States Court of Appeals
## For the First Circuit

No. 14-2287

MUNICIPIO AUTÓNOMO DE PONCE; CENTRO DEAMBULANTES CRISTO POBRE,
INC.; LUCHA CONTRA EL SIDA, INC.; INICIATIVA COMMUNITARIA, INC.;
ITCIA HERNÁNDEZ-LABOY; JORGE ORTIZ-TORRES; JOSÉ ALVAREZ-MEDINA;
HOGAR CREA POSADA LA ESPERANZA,

Plaintiffs, Appellees,

v.

UNITED STATES OFFICE OF MANAGEMENT AND BUDGET; BRIAN DEESE,
Acting Director, United States Office of Management and Budget;
UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; SYLVIA
MATHEWS BURNWELL, Secretary, United States Department of Health
and Human Services; UNITED STATES HEALTH RESOURCES AND SERVICES
ADMINISTRATION; MARY WAKEFIELD, Administrator, Health Resources
and Services Administration,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Kayatta, Stahl, and Barron,
Circuit Judges.

Jeffrey A. Clair, Attorney, Civil Division, Department of
Justice, with whom Michael S. Raab, Attorney, Civil Division,
Department of Justice, Benjamin C. Mizer, Principal Deputy
Assistant Attorney General, Civil Division, Department of Justice,
and Rosa Emilia Rodríguez-Vélez, United States Attorney, were on
brief, for appellants.

Edgar Hernández Sánchez, with whom Cancio, Nadal, Rivera & Díaz, P.S.C., was on brief, for appellees.

_____

December 22, 2015

_____

**KAYATTA**, **Circuit Judge**.  This lawsuit concerns the Ryan White Comprehensive AIDS Resources Emergency Act ("Ryan White Act" or the "Act"), Pub. L. No. 101–381, 104 Stat. 576 (1990) (codified at 42 U.S.C. § 300ff et seq.).  Under "Part A" of the Act, the U.S. Department of Health and Human Services ("HHS") disburses funding to combat HIV/AIDS infection in metropolitan areas that are home to more than a specified number of individuals who have AIDS.  42 U.S.C. § 300ff-11(a).  This lawsuit arose because HHS recently determined that the Ponce metropolitan area no longer has enough AIDS cases to qualify for continued Part A funding.  Joined by several community health groups, Ponce claims that HHS has unfairly drawn the boundaries of Ponce's metropolitan area too narrowly, and that the addition of three adjoining communities would raise the total number of AIDS cases enough to qualify for continued funding.  Confronted with what it correctly recognized as largely unhelpful briefing by the parties, the district court agreed with Ponce in part and declared that the boundaries of the Ponce area were "unlawful as they now stand."  Municipio Autónomo de Ponce v. U.S. Office of Mgmt. & Budget, 40 F. Supp. 3d 222, 234 (D.P.R. 2014), reconsideration denied, No. 3:14-CV-01502 JAF, 2014 WL 4639896 (D.P.R. Sept. 16, 2014) ("Ponce").  Because we agree with HHS that Congress can reasonably be said to have dictated

that HHS use the boundaries that it uses in defining the Ponce metropolitan area, we reverse.[1]

## I.    BACKGROUND

The Act originally defined "metropolitan area" to be "an area referred to in the HIV/AIDS Surveillance Report of the Centers for Disease Control and Prevention as a metropolitan area."  42 U.S.C. § 300ff-17(2) (1992); see also id. § 300ff-19(d)(3) (explicitly adopting the § 300ff-17 definitions for the subsection relevant to Ponce).  When Congress enacted this definition, the CDC used the Office of Management and Budget's ("OMB") delineations of geographical Metropolitan Statistical Areas ("MSAs") in its Surveillance Reports.  See Ctr. Disease Control, Dept. Health & Human. Servs., HIV/AIDS Surveillance Report 21 (Jan. 1990). Accordingly, the practical effect of the manner in which Congress defined "metropolitan area" was to require HHS to use as its metropolitan areas under the Act the MSAs developed by OMB, unless and until CDC started using some other definition in its surveillance reports.  And CDC has in fact continued to use OMB's MSAs in its surveillance reports.  See, e.g., Ctr. Disease Control, Dept. Health & Human Servs., HIV/AIDS Surveillance Report 18

---

[1] We have expedited this appeal because, according to HHS: "Funding decisions are typically made by January 15th of each year, and funds are typically awarded on or about March 1st.  Moreover, once funds are disbursed, HHS's practical ability to recoup erroneous awards and redistribute them to eligible grantees is exceedingly limited."

- 4 -

(July 1993) (hereinafter, "1993 Surveillance Report"); Ctr. Disease Control, Dept. Health & Human Servs., HIV/AIDS Surveillance Report 14 (2013).

For its own purposes, OMB has delineated the boundaries of MSAs (under various names) since the 1940s. See 2010 Standards for Delineating Metropolitan and Micropolitan Statistical Areas, 75 Fed. Reg. 37,246, 37,246 (June 28, 2010) (hereinafter "2010 MSA Standards"). OMB's standards for arriving at the delineations and the MSAs themselves are published decennially in the Federal Register. See Revised Standards for Defining Metropolitan Areas in the 1990's, 55 Fed. Reg. 12154-01 (Mar. 30, 1990) (hereinafter, "1990 MSA Standards"). The delineations are issued according to OMB's general statutory mandate to "develop and oversee the implementation of Governmentwide [sic] policies, principles, standards, and guidelines concerning--(A) statistical collection procedures and methods; (B) statistical data classification; (C) statistical information presentation and dissemination; [etc.]." 44 U.S.C. § 3504(e)(3); see also 31 U.S.C. § 1104(d) (overlapping, similar statutory mandate).

OMB has made it clear that it developed the MSAs to be used "solely for statistical purposes" and they might not be suitable for allocating funding. 2010 MSA Standards at 37,246.[2]

_____

[2] See also, e.g., Office of Mgmt. & Budget Bull. No. 15-01, Revised Delineations of Metropolitan Statistical Areas,

The CDC, though, does not make the Ryan White Act funding decisions. Nor did it "select" OMB's MSAs to be used for that purpose. The CDC uses the MSAs as they were intended: for the purpose of gathering statistics. It did so before and when the Act was enacted; and there is no hint in the Act at all that the CDC needed to set aside its own purposes in selecting how to define "metropolitan areas."

Under OMB's 1993 delineation used by CDC in its 1993 Report and, thus, used by HHS to award Part A grants in fiscal year 1994, Puerto Rico was divided into four "metropolitan areas": the "Combined Metropolitan Area" of San Juan, which includes 38 of the island's 78 communities, and three other "Metropolitan Statistical Areas," one of which is comprised of Ponce and five other communities. As thus delineated, Ponce initially qualified as eligible to receive funding under the Act. In 1996, however,

---

Micropolitan Statistical Areas, and Combined Statistical Areas, and Guidance on Uses of the Delineations of These Areas 3 (2015), available at https://www.whitehouse.gov/sites/default/files/omb/bulletins/2015/15-01.pdf ("These areas should not serve as a general-purpose geographic framework for nonstatistical activities, and they may or may not be suitable for use in program funding formulas."); Office of Mgmt. & Budget Bull. No. 13-01, Revised Delineations of Metropolitan Statistical Areas 3 (2013) (same language); Standards for Defining Metropolitan and Micropolitan Statistical Areas, 65 Fed. Reg. 82,228, 82,228 (Dec. 27, 2000) ("Programs that base funding levels or eligibility on whether a county is included in a Metropolitan or Micropolitan Statistical Area may not accurately address issues or problems faced by local populations . . . .").

Congress raised the eligibility requirements,[3] enough so that Ponce's number of AIDS cases no longer rendered it eligible. Nevertheless, for a decade Ponce continued to receive funding as if it were eligible based on a grandfathering provision included in the 1996 legislation. 42 U.S.C. § 300ff-11(d) (2000), as amended by Ryan White CARE Act Amendments of 1996, Pub. L. No. 104-146, § 3(d), 110 Stat. 1346, 1347 (1996) (amended 2006, 2009).

In 2006 Congress removed the grandfathering provision, but Ponce still managed to receive funding under the newly-created category of "transitional [grant] area[s]." Ryan White HIV/AIDS Treatment Modernization Act of 2006, Pub. L. No. 109-415, §§ 101, 2609, 120 Stat. 2767, 2768, 2781–83 (2006) (codified in part at 42 U.S.C. § 300ff-19 (2012) (amended 2009)). A transitional grant area is defined as a metropolitan area "for which there has been reported to and confirmed by the Director of the Centers for Disease Control and Prevention a cumulative total of at least 1,000, but fewer than 2,000, cases of AIDS during the most recent period of 5 calendar years . . . ." Id. Under the current amended statute, a metropolitan area ceases to be eligible as a transitional grant area if, in each of three consecutive years, it fails to have more than 1,000 and less than 2,000 reported AIDS cases in the preceding five years, id. § 300ff-19(c)(2)(A)(i), and

---

[3] 42 U.S.C. §§ 300ff-11(a); (c)(1) (2000).

fails to have a cumulative total of at least 1,400 living AIDS cases in the most recent calendar year,[4] id. §§ 300ff-19(c)(2)(A)(ii), (2)(B); see generally County of Nassau v. Leavitt, 524 F.3d 408 (2d Cir. 2008).

In the 1996 legislation, and then as refined in the 2006 legislation, Congress also froze the boundaries of the metropolitan areas to be used by HHS. Ryan White Amendments of 1996 § 101. For metropolitan areas that received funding as "eligible areas" in 2006, "the boundaries of such metropolitan area shall be the boundaries that were in effect for such area for fiscal year 1994," 42 U.S.C. § 300ff-11(c)(1), while for metropolitan areas that become "eligible areas" after fiscal year 2006, "the boundaries of such metropolitan area shall be the boundaries that are in effect for such area when such area initially receives funding . . . .," id. § 300ff-11(c)(2). The 2006 amendments, however, did not so directly dictate which year's boundaries should be used for metropolitan areas like Ponce that were no longer eligible areas for funding under 42 U.S.C. § 300ff-11(a), but were instead receiving funding as "transitional areas" under § 300ff-19. HHS nevertheless applies the same approach to transitional areas (all of which were once eligible areas), and

---

[4] Unless the grantee had not "[]obligated" at least 95 percent of the Part A funding it had received in the previous year, in which case it was required to have 1,500 living AIDS cases that year. See 42 U.S.C. §§ 300ff-19(c)(2)(A)(ii), (2)(B).

- 8 -

supports this consistent approach by appealing to administrative convenience and "continuity of care," noting that acting otherwise would lead to overlapping "eligible" and "transitional" areas and confound Congress's scheme. Ponce offers no rejoinder to this conclusion.[5]

By fiscal year 2014, the number of cumulative AIDS cases and the number of living AIDS cases within the Ponce metropolitan area as delineated in the 1993 OMB MSA had dropped enough for a long enough period of time that HHS notified Ponce that it no longer qualified for transitional funding.[6] Ponce thereupon filed this lawsuit, arguing that HHS must expand its delineation of Ponce's boundaries to include three additional municipalities[7] and that, as thus expanded, Ponce would have enough AIDS cases to

---

[5] Nor, for that matter, does Ponce argue that it would qualify for funding under any subsequent MSA delineations adopted by CDC or OMB. In fact, the 1993 boundaries of the Ponce MSA appear to be the same as those most-recently promulgated by OMB in 2010 and revised in 2015, save for the more recent addition of only the municipality of Guánica. Compare Office of Mgmt. & Budget, Metropolitan Areas and Components 21 (June 30, 1993), with Office of Mgmt. & Budget Bull. No. 15-01, supra n.2, at 45.

[6] Ponce may well have failed to qualify earlier were it not for additional grandfathering provisions added by Congress in 2006 and 2009, meaning that metropolitan areas that were eligible areas in 2010 (or 2007) but not in 2011 (or 2008) became transitional grant areas without regard to the number of AIDS cases they had. See 42 U.S.C. § 300ff-19(c)(1) (2008), as amended by Ryan White Modernization Act of 2006 § 2609; 42 U.S.C. § 300ff-19(c)(1)(2012), as amended by Ryan White HIV/AIDS Treatment Extension Act of 2009, Pub. L. No. 111-87, § 4(a)(1), 123 Stat. 2885, 2889 (Oct. 30, 2009).

[7] Namely, the municipalities Adjuntas, Santa Isabel, and Coamo.

continue to qualify.  In support of this argument, Ponce presented the report of a management consultant, who opined that defining Ponce's boundaries in that manner would be consistent with OMB's standards.

Sympathetic to Ponce's request, the district court concluded that HHS acted arbitrarily and capriciously in employing the MSAs to define the "metropolitan area" of Ponce because HHS has no records that would demonstrate this was "a rational exercise of deliberative decision making."  Ponce, 40 F. Supp. 3d at 231 (quoting Associated Fisheries of Me., Inc. v. Daley, 127 F.3d 104, 111 (1st Cir. 1997)).  The district court also decided that HHS's methodology for defining metropolitan areas in Puerto Rico was unfair and discriminatory because HHS used boundaries for metropolitan areas in New England "that were different from the OMB MSAs."  Id. at 229.  The court issued an order requiring HHS to develop a new definition of the Ponce metropolitan area that would more adequately address the factors that the district court believed needed to be addressed.  Id. at 233.

## II.  ANALYSIS

While a court might, we assume, order relief if HHS refused to use the boundaries Congress told it to use, there is in this legislative scheme no license for a court to tell HHS not to use what Congress said to use: those boundaries that were "in effect for such area for fiscal year 1994" (i.e., the areas as

"referred to" in the CDC's 1993 Surveillance Report).  42 U.S.C. § 300ff-11(c)(1).  Nor is there any license here for a court to review either CDC's choice of area delineation in its own 1993 Report, or OMB's choices in delineating the boundaries of metropolitan areas for its own reports.  The relevant standards of selection in this case are the statutory mandate that HHS in 1994 use the area that CDC was using, and the statutory direction in 1996 as refined in 2006 that HHS continue to use the delineation that it used in 1994.  And HHS has plainly complied with both of these mandates.  See Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council, Inc., 467 U.S. 837, 842 (1984) ("If the intent of Congress is clear, that is the end of the matter . . . .").

As for the district court's "discrimination" theory, it appears that the court mistakenly believed that HHS was not following Congress's mandate to use the areas referred to in the CDC's surveillance reports (the OMB MSAs) and was instead using a different definition for the New England states.  Ponce, 40 F. Supp. 3d at 227-29.  According to the district court, this represented "unexplained discrimination."  Id. at 231 (quoting P.R. Sun Oil Co. v. U.S. E.P.A., 8 F.3d 73, 77 (1st Cir. 1993)).  In fact, HHS does use the same delineations that CDC uses, which is the statutorily relevant question, including those for the New England states.  And thus there was no "unexplained discrimination."  Id.

- 11 -

To be sure, the CDC's explanation of the technical methodology it used to compile its 1993 Surveillance Report is less than clear.  See 1993 Surveillance Report at 18.  The Report explains that "[t]he metropolitan area definitions [used in the report] are the MSAs for all areas except the 6 New England states.  For these states, the New England County Metropolitan Areas (NECMA) are used."  Id.  The district court apparently read this to mean that HHS chose not to adopt the OMB's delineations for these few states.  In fact, the CDC was merely describing how the OMB itself treats New England states differently.  In 1990, for example, OMB explained that "in New England," it used "an alternative county-based definition of MSAs known as the New England County Metropolitan Areas (NECMAs)."  1990 MSA Standards at 12,157.  The NECMAs are thus an "alternative [] definition" of an MSA, not an alternative to an MSA.  Id.

To put all this in perspective, it is helpful to observe that only 52 metropolitan areas in the entire United States received such funding in the last fiscal year.  See U.S. Dep't Health Human Servs., Ryan White HIV/AIDS Program FY 2014 Part A Awards, http://www.hrsa.gov/about/news/2014tables/ryanwhite/parta.html (last viewed Dec. 17, 2015) (demonstrating that no metropolitan area in Maine, New Hampshire, Rhode Island, or Vermont received funding).  And San Juan received one of the larger outlays.  See id.  While we acknowledge that Puerto Rico suffers

- 12 -

the disadvantage of lacking formal representation in Congress, there is simply nothing whatsoever in this case to suggest that HHS treats the Ponce metropolitan area under the Act in any way differently than it does hundreds of similarly-situated areas across the United States.

In sum, we reject the district court's assumption that this litigation somehow provides an opportunity for the court to question HHS for doing what Congress told it to do. See Ponce, 40 F. Supp. 3d at 231–32. Congress told HHS, first, to use in 1994 whatever areas CDC was using at the time in its surveillance reports. And it then told HHS to use whatever area it used in 1994. HHS plainly did both of these things.

## III. CONCLUSION

We reverse the district court's entry of judgment for plaintiffs and remand for entry of judgment in favor of defendants dismissing the complaint with prejudice.